# No. 18-1104-cv

# United States Court of Appeals
*for the*
# Eighth Circuit



MARK HORTON,

*Plaintiff-Appellant,*

v.

MIDWEST GERIATRIC MANAGEMENT, LLC,

*Defendant-Appellee.*

On Appeal From The United States District Court
For The Eastern District Of Missouri

## BRIEF OF 47 BUSINESSES AND ORGANIZATIONS AS
*AMICI CURIAE* IN SUPPORT OF PLAINTIFF-APPELLANT

Brian D. Klar
KLAR, IZSAK & STENGER, L.L.C.
1505 S. Big Bend Blvd.
St. Louis, Missouri 63117
(314) 863-1117

*Attorneys for Amici Curiae*
 *(as listed on inside cover)*

Todd Anten (*counsel of record*)
Justin T. Reinheimer
Cory D. Struble
QUINN EMANUEL URQUHART &
  SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
(212) 849-7000

Tico Almeida
QUINN EMANUEL URQUHART &
  SULLIVAN, LLP
1300 I St. NW, Suite 900
Washington, DC 20005
(202) 538-8000

*Attorneys for Amici Curiae*
 *(as listed on inside cover)*

March 14, 2018

*Amici Curiae* represented by Quinn Emanuel Urquhart & Sullivan, LLP:

> AdRoll, Inc. d/b/a AdRoll Group; Airbnb; BASF Corporation; Caldwell Partners; CBS Corporation; Christopher Street Financial; Citrix Systems, Inc.; Clockwork; Diageo North America, Inc.; Diversified Health and Wellness Center, LLC; DoorDash, Inc.; Dropbox, Inc.; Eastern Bank; eBay; Edelman; The Estée Lauder Companies; FiftyThree, Inc.; Freedom for All Americans Education Fund; Gusto; IAC/InterActiveCorp; Kargo; KEO Marketing Inc.; Levi Strauss & Co.; Linden Research, Inc. d/b/a Linden Lab; Lyft; Mapbox; MassMutual; National Gay & Lesbian Chamber of Commerce (NGLCC); NIO U.S.; OBOX Solutions; Out Leadership; PayPal Holdings, Inc.; Pinterest; Replacements, Ltd.; Rhapsody International Inc. d/b/a Napster; salesforce.com, inc.; Thumbtack, Inc.; Ultragenyx Pharmaceutical Inc.; Viacom Inc.; Witeck Communications

*Amici Curiae* represented by Klar, Izsak & Stenger, L.L.C.:

> City National Bank; Deutsche Bank; Microsoft Corporation; Morgan Stanley; RBC Bank (Georgia), N.A.; RBC Capital Markets, LLC; Royal Bank of Canada

<u>**CORPORATE DISCLOSURE STATEMENT**</u>

**AdRoll, Inc. d/b/a AdRoll Group** has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

**Airbnb, Inc.** has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

**Austin, Hatch & Smith, LLC d/b/a Christopher Street Financial** has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

BASF SE is the parent corporation of **BASF Corporation**. No publicly held corporation owns 10% or more of its stock.

The Caldwell Partners International Inc., an Ontario, Canada corporation, is the parent company of **The Caldwell Partners International Ltd.** No publicly held corporation holds 10% or more of its stock.

National Amusements, Inc., a privately held company, beneficially owns a majority of the Class A voting stock of **CBS Corporation**. CBS Corporation is not aware of any publicly traded corporation that owns 10% or more of its stock.

**City National Bank**, a national banking association, is a wholly-owned subsidiary of RBC USA Holdco Corporation, a Delaware corporation, which is a wholly-owned subsidiary of Royal Bank of Canada.

**Citrix Systems, Inc.** has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

**Clockwork Active Media Systems, LLC** has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

**Daniel J. Edelman Inc.** has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

Deutsche Bank AG is the parent company of **DB USA Corp.,** an intermediate holding company of Deutsche Bank AG. No publicly held corporation owns 10% or more of its stock.

Diageo plc, a publicly held corporation, is the parent company of **Diageo North America, Inc.** No publicly held corporation owns 10% or more of its stock.

**Diversified Health and Wellness Center, LLC** has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

**DoorDash, Inc.** has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

**Dropbox, Inc.** has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

Eastern Bank Corporation is the parent corporation of **Eastern Bank**. No publicly held corporation owns 10% or more of its stock.

**eBay Inc.** has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

**The Estée Lauder Companies** has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

**FiftyThree, Inc.** has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

**Freedom for All Americans Education Fund** is a 501(c)(3) charitable organization. It has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

**IAC/InterActiveCorp** is the parent corporation of numerous Internet businesses such as Match.com, OkCupid, Tinder, HomeAdvisor, Angie's List, Investopedia, The Daily Beast, and Vimeo. It has no parent company, and no publicly held corporation owns 10% or more of its stock.

**Kargo Global, Inc. d/b/a Kargo** has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

**KEO Marketing Inc.** has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

**Levi Strauss & Co.** has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

**Linden Research, Inc. d/b/a Linden Lab** has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

**Lyft, Inc.** has no parent corporation. Rakuten, Inc. (a publicly held corporation traded on the Tokyo Stock Exchange) and General Motors Company (a publicly held corporation traded on the New York Stock Exchange) each own more than 10% of Lyft's outstanding stock, in each case through a subsidiary.

**Mapbox, Inc.** has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

**MassMutual** has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

**Microsoft Corporation** has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

**Morgan Stanley** is a publicly held corporation that has no parent corporation. Based on Securities and Exchange Commission Rules regarding beneficial ownership, Mitsubishi UFJ Financial Group, Inc., 7-1 Marunouchi 2-chome, Chiyoda-ku, Tokyo 100-8330, beneficially owns greater than 10% of Morgan Stanley's outstanding common stock.

**National Gay & Lesbian Chamber of Commerce** has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

NIO Nextev Limited (HK) is the parent corporation of **NIO USA, Inc.** No publicly held corporation owns 10% or more of its stock.

**OBOX Solutions** has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

**Out Leadership, LLC** has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

**PayPal Holdings, Inc.** has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

**Pinterest, Inc.** has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

Royal Bank of Canada is the parent corporation of **RBC Bank (Georgia), N.A.** No publicly held corporation owns 10% or more of its stock.

Royal Bank of Canada is the parent corporation of **RBC Capital Markets, LLC**. No publicly held corporation owns 10% or more of its stock.

**Replacements, Ltd.** has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

**Rhapsody International Inc. d/b/a Napster** has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

**Royal Bank of Canada** has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

**salesforce.com, inc.** has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

**Thumbtack, Inc.** has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

**Ultragenyx Pharmaceutical Inc.** has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

**Viacom Inc.** has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

**Witeck Communications, Inc.** has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

**ZenPayroll, Inc. d/b/a Gusto** has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ..........................................................i

TABLE OF AUTHORITIES ................................................................. viii

STATEMENT OF INTEREST .............................................................1

SUMMARY OF ARGUMENT .................................................................3

ARGUMENT ..................................................................................4

I.   THE U.S. ECONOMY BENEFITS FROM A DIVERSE
     WORKFORCE .......................................................................4

II.  EXCLUDING SEXUAL ORIENTATION FROM TITLE VII'S
     PROHIBITION ON SEX DISCRIMINATION UNDERMINES
     DIVERSE AND INCLUSIVE WORKPLACES ...........................................7

     A.   Discrimination Based On Sexual Orientation Is Still Prevalent
          In Many Workplaces Across The Country...........................................7

     B.   Excluding Sexual Orientation From Title VII's Scope Leaves
          Employees Vulnerable To Discrimination And Undermines
          Inclusive Workplaces ...........................................................10

III. THE PATCHWORK OF EXISTING ANTI-DISCRIMINATION
     LAWS CREATES A FRACTURED WORKFORCE, HARMING
     BUSINESS AND THE U.S. ECONOMY ...................................................13

CONCLUSION ...................................................................................17

CERTIFICATE OF COMPLIANCE.............................................................19

CERTIFICATE OF SERVICE ...................................................................20

# TABLE OF AUTHORITIES

**Page**

## Cases

*Capek v. BNY Mellon, N.A.,*
2016 WL 2993211 (S.D.N.Y. May 23, 2016) ...................................15

*Hively v. Ivy Tech Cmty. Coll. of Ind.,*
853 F.3d 339 (7th Cir. 2017) (en banc) ...........................................14

*Perry v. Schwarzenegger,*
704 F. Supp. 2d 921 (N.D. Cal. 2010) .............................................11

*Roberts v. United Parcel Serv., Inc.,*
115 F. Supp. 3d 344 (E.D.N.Y. 2015) ................................................8

*SmithKline Beecham Corp. v. Abbott Labs.,*
740 F.3d 471 (9th Cir. 2014) ..............................................................7

*Zarda v. Altitude Express, Inc.,*
--- F.3d ---, 2018 WL 1040820 (2d Cir. Feb. 26, 2018) (en banc) ....................14

## Statutes

Cal. Gov't Code § 12940 ...................................................................13

Colo. Rev. Stat. § 24-34-402 .............................................................13

Conn. Gen. Stat. § 46a-81c ...............................................................13

D.C. Code § 2-1402.11 ......................................................................13

Del. Code Ann. tit. 19, § 711 ............................................................13

Haw. Rev. Stat. § 378-2 .....................................................................13

775 Ill. Comp. Stat. Ann. 5/1-102 ....................................................13

Iowa Code § 216.6 .............................................................................13

Me. Rev. Stat Ann. tit. 5, § 4571 ......................................................13

Md. Code Ann., State Gov't § 20–606 ..............................................13

Mass. Gen. Laws ch. 151B, § 4 .........................................................13

Minn. Stat. § 363A.08 ........................................................................13

Nev. Rev. Stat. § 613.330 ..................................................................13

N.H. Rev. Stat. Ann. § 354-A:7 ........................................................13

N.J. Stat. Ann. §§ 10:5-4, 10:5-12 ...........................................................14

N.M. Stat. Ann. § 28-1-7 ..........................................................................14

N.Y. Exec. Law § 296...............................................................................14

Or. Rev. Stat. § 659A.030........................................................................14

R.I. Gen. Laws § 28-5-7...........................................................................14

Utah Code Ann. § 34A-5-106...................................................................14

Vt. Stat. Ann. tit. 21, § 495 .....................................................................14

Wash. Rev. Code §§ 49.60.030, 49.60.180 ............................................14

Wis. Stat. § 111.36. .................................................................................14

## Other Authorities

M.V. Lee Badgett, et al., *The Business Impact of LGBT-Supportive Workplace Policies*, THE WILLIAMS INST. (May 2013)................................10

Laura G. Barron & Michelle Hebl, *The Force of Law: The Effects of Sexual Orientation Antidiscrimination Legislation on Interpersonal Discrimination in Employment*, 19 PSYCH. PUB. POL'Y & L. 191 (2013)............................................................................9, 17

Luke A. Boso, *Acting Gay, Acting Straight: Sexual Orientation Stereotyping*, 83 TENN. L. REV. 575 (2016)....................................10, 17

Lauren Box, *It's Not Personal, It's Just Business: The Economic Impact of LGBT Legislation*, 48 IND. L. REV. 995 (2015) ................................6

Crosby Burns, *The Costly Business of Discrimination*, CTR. FOR AM. PROGRESS (2012)...........................................................................6, 10, 13

Credit Suisse ESG Research, *LGBT: The Value of Diversity* (2016) .......................6

EEOC, COMPLIANCE MANUAL § 15-II (2006) ........................................15

EEOC, *Employment Discrimination Based on Religion, Ethnicity, or Country of Origin*.................................................................................15

*Equality at Work: The Employment Non-Discrimination Act: Examining Equality at Work, Including S. 811, To Prohibit Employment Discrimination on the Basis of Sexual Orientation or Gender Identity Before S. Comm. on Health, Educ., Labor, and Pensions*, 112th Cong. 8-10 (2012)..................................................................................8

Gary J. Gates, *In US, More Adults Identifying as LGBT*, GALLUP (Jan. 11, 2017) ..........................................................................7

Gary J. Gates, *LGBT Demographics: Comparisons Among Population-Based Surveys*, THE WILLIAMS INST. (Oct. 2014)....................................7

Gary J. Gates, *Marriage and Family: LGBT Individuals and Same-Sex Couples*, 25 FUTURE OF CHILDREN (Fall 2015) ................................16

Gary J. Gates & Taylor N. T. Brown, *Marriage and Same-sex Couples after* Obergefell, THE WILLIAMS INST. (Nov. 2015) ...........................16

Gary J. Gates & Frank Newport, *An Estimated 780,000 Americans in Same-Sex Marriages*, GALLUP (Apr. 24, 2015) ....................................16

Jeff Green, *LGBT Purchasing Power Near $1 Trillion Rivals Other Minorities*, BLOOMBERG (July 20, 2016) ...........................................5

Mark L. Hatzenbuehler, et al., *Stigma as a Fundamental Cause of Population Health Inequalities,* 103 AM. J. PUB. HEALTH 813 (2013) ..............12

Mark L. Hatzenbuehler, et al., *Structural Stigma and All-Cause Mortality in Sexual Minority Populations*, 103 SOC. SCI. & MED. 33 (2014) ...................12

Sylvia Ann Hewlett, et al., *How Diversity Can Drive Innovation*, HARV. BUS. REV. (Dec. 2013) ...............................................................5

Sylvia Ann Hewlett, et al., *Innovation, Diversity, and Market Growth*, CTR. FOR TALENT INNOVATION (2013)................................................6

Human Rights Campaign, *The Cost of the Closet and the Rewards of Inclusion: Why the Workplace Environment for LGBT People Matters to Employers* (May 2014)................................................11, 12

Ian Johnson & Darren Cooper, *LGBT Diversity: Show Me the Business Case*, OUT NOW (2015) .........................................................13

Jeffrey M. Jones & Gary J. Gates, *Same-Sex Marriages Up After Supreme Court Ruling*, GALLUP (Nov. 5, 2015)................................................16

Christy Mallory & Brad Sears, *Discrimination, Diversity, and Development: The Legal and Economic Implications of North Carolina's HB2*, THE WILLIAMS INST. (May 2016) .............................................13

Vickie M. Mays & Susan D. Cochran, *Mental Health Correlates of Perceived Discrimination Among Lesbian, Gay, and Bisexual Adults in the United States*, 91 AM. J. PUB. HEALTH 1874 (2001)...................12

Ilan H. Meyer, *Prejudice, Social Stress, and Mental Health in Lesbian, Gay, and Bisexual Populations: Conceptual Issues and Research Evidence*, 129 PSYCHOL. BULL. 674 (2003).........................................12

Jon Miller & Lucy Parker, *Open For Business: The Economic and Business Case for Global LGB&T Inclusion* (2015) ...........................4

Alison Kenney Paul, et al., *Diversity as an Engine of Innovation: Retail and Consumer Goods Companies Find Competitive Advantage in Diversity*, 8 DELOITTE REV. 108 (2011) .........................................5

Pew Research Center, *A Survey of LGBT Americans: Attitudes, Experiences and Values in Changing Times* (June 2013) ....................................9

Jennifer C. Pizer, et al., *Evidence of Persistent and Pervasive Workplace Discrimination Against LGBT People: The Need for Federal Legislation Prohibiting Discrimination and Providing for Equal Employment Benefits*, 45 LOY. L.A. L. REV. 715 (2012)...........8, 9, 10, 11

Brad Sears & Christy Mallory, *Documented Evidence of Employment Discrimination & Its Effects on LGBT People*, THE WILLIAMS INST. (July 2011).......................................................................................8, 9, 15

Brad Sears & Christy Mallory, *Economic Motives for Adopting LGBT-Related Workplace Policies*, THE WILLIAMS INST. (Oct. 2011) ...........................6

Sandra F. Sperino, *The New Calculus of Punitive Damages for Employment Discrimination Cases*, 62 OKLA. L. REV. 701 (2010) ...................14

András Tilcsik, *Pride and Prejudice: Employment Discrimination Against Openly Gay Men in the United States*, 117 AM. J. SOC. 586 (2011).......9

## STATEMENT OF INTEREST[1]

The 47 businesses and organizations that join this brief share an interest in equality because they know that ending discrimination in the workplace is good for business, their employees, and the U.S. economy as a whole. The below businesses and organizations are committed to giving everyone the opportunity to earn a living, excel in their profession, and provide for their family free from fear of unequal treatment. *Amici* listed below support the notion that no one should be passed over for a job, paid less, fired, or subject to harassment or any other form of discrimination based on nothing more than their sexual orientation, which is inherently sex-based. Creating workplaces in which employees are and feel safe from discrimination frees them to do their best work, with substantial benefits for their employers.

The businesses and organizations joining this brief are (in alphabetical order):

1. AdRoll, Inc. d/b/a AdRoll Group
2. Airbnb
3. BASF Corporation
4. Caldwell Partners
5. CBS Corporation
6. Christopher Street Financial

---

[1] Pursuant to Fed. R. App. P. 29(a)(4)(E) *amici* state that no party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting this brief; and no other person contributed money that was intended to fund preparing or submitting this brief.

7. Citrix Systems, Inc.

8. City National Bank

9. Clockwork

10. Deutsche Bank

11. Diageo North America, Inc.

12. Diversified Health and Wellness Center, LLC

13. DoorDash, Inc.

14. Dropbox, Inc.

15. Eastern Bank

16. eBay

17. Edelman

18. The Estée Lauder Companies

19. FiftyThree, Inc.

20. Freedom For all Americans Education Fund

21. Gusto

22. IAC/InterActiveCorp

23. Kargo

24. KEO Marketing Inc.

25. Levi Strauss & Co.

26. Linden Research, Inc. d/b/a Linden Lab

27. Lyft

28. Mapbox

29. MassMutual

30. Microsoft Corporation

31. Morgan Stanley

32. National Gay & Lesbian Chamber of Commerce (NGLCC)

33. NIO U.S.

34. OBOX Solutions

35. Out Leadership

36. PayPal Holdings, Inc.

37. Pinterest

38. RBC Bank (Georgia), N.A.

39. RBC Capital Markets, LLC

40. Replacements, Ltd.

41. Rhapsody International Inc. d/b/a Napster

42. Royal Bank of Canada

43. salesforce.com, inc.

44. Thumbtack, Inc.

45. Ultragenyx Pharmaceutical Inc.

46. Viacom Inc.

47. Witeck Communications

# SUMMARY OF ARGUMENT

Interpreting Title VII of the Civil Rights Act of 1964 to exclude sexual orientation from protections against sex discrimination, as the district court did in the decision below, has wide-ranging, negative consequences for businesses, their employees, and the U.S. economy. Businesses' first-hand experiences—supported by extensive social-science research—confirm the significant costs for employers and employees when sexual orientation discrimination is not forbidden by a uniform law, even where other policies exist against such discrimination. Our nation's employers and employees would benefit from this Court's ruling that members of the nation's large and productive lesbian, gay, bisexual and transgender ("LGBT") workforce need not fear discrimination for simply doing their jobs.

There is no truth to the notion that laws forbidding sexual orientation discrimination are unreasonably costly or burdensome for business. To the contrary, recognizing that Title VII prohibits sexual orientation discrimination as a form of sex discrimination would strengthen and expand benefits to businesses, such as the ability to recruit and retain top talent; to generate innovative ideas by drawing on a greater breadth of perspectives and experiences; to attract and better serve a diverse customer base; and to increase productivity among employees who experience their workplace as a place where they are valued and respected.

Accordingly, the 47 above-listed businesses and organizations joining this brief respectfully urge this Court to recognize that Title VII's prohibition on discrimination "because of … sex" includes the prohibition of sexual orientation discrimination.

## ARGUMENT

*Amici* are businesses and organizations in wide-ranging sectors of the national and local economy and are committed to building workplaces that value diversity, inclusion, and equality. The U.S. economy is strengthened when ***all*** employees are protected from discrimination in the workplace. The failure to recognize that Title VII protects LGBT workers hinders the ability of *amici* to compete in all corners of the nation and harms the U.S. economy as a whole.

## I.  THE U.S. ECONOMY BENEFITS FROM A DIVERSE WORKFORCE

Diversity is a key factor in U.S. businesses' ability to compete and succeed in the modern global economy. Including diverse viewpoints in the workforce brings unique backgrounds and experiences to the table, fostering creativity and innovation, making such businesses more competitive in the local, national, and global economy.[2] Diversity has been found to "unlock[] innovation by creating an

---

[2]  *See* Jon Miller & Lucy Parker, *Open For Business: The Economic and Business Case for Global LGB&T Inclusion* 28 (2015), https://tinyurl.com/y9mtp3of ("Researchers have found a close correlation between economic development and LGB&T inclusion.").

environment where 'outside the box' ideas are heard."[3] LGBT individuals come from all backgrounds, offer insights drawn from every walk of life, and bring unique and valuable perspectives on these experiences.

A diverse and inclusive workforce likewise furthers businesses' ability to connect with consumers, particularly given that the buying power of diverse groups has increased substantially over the past 30 years.[4] In 2016, the buying power of LGBT people in the United States stood at over $900 billion.[5] In "matching the market," businesses succeed by including diverse employees who "are better attuned to the unmet needs of consumers or clients like themselves," and "their insight is critical to identifying and addressing new market opportunities."[6]

LGBT-inclusive workplaces result in stronger work performance by *all* employees. When LGBT employees feel safe to be themselves in the workplace,

---

[3] Sylvia Ann Hewlett, et al., *How Diversity Can Drive Innovation*, HARV. BUS. REV. (Dec. 2013), https://tinyurl.com/j8nyu8k.

[4] Alison Kenney Paul, et al., *Diversity as an Engine of Innovation: Retail and Consumer Goods Companies Find Competitive Advantage in Diversity*, 8 DELOITTE REV. 108, 111 (2011), https://tinyurl.com/ya8nb3rd.

[5] Jeff Green, *LGBT Purchasing Power Near $1 Trillion Rivals Other Minorities*, BLOOMBERG (July 20, 2016), https://tinyurl.com/jzdaptl ("The combined buying power of U.S. lesbian, gay, bisexual and transgender adults rose about 3.7 percent to $917 billion last year[.]").

[6] Sylvia Ann Hewlett, et al., *Innovation, Diversity, and Market Growth*, CTR. FOR TALENT INNOVATION 4 (2013), https://tinyurl.com/htpyqra.

"everybody's productivity is enhanced, including straight and nontransgender colleagues."[7] In a survey of the top 50 Fortune 500 companies and the top 50 federal government contractors, for example, the overwhelming majority of the top-performing, most-innovative companies connect policies prohibiting sexual orientation discrimination with a better bottom line.[8]

Recent studies confirm that companies with LGBT-inclusive workplaces have better financial outcomes.[9] This superior performance extends beyond the walls of the company itself to the larger community in which the company operates; as multiple studies have found, the level of inclusiveness of LGBT employees is strongly correlated with a jurisdiction's "wealth, prospects for economic investment, and ability to recruit talent."[10] Recognizing that uniform federal law protects LGBT employees would benefit individual businesses, and the

---

[7] Crosby Burns, *The Costly Business of Discrimination*, CTR. FOR AM. PROGRESS 34 (2012), https://tinyurl.com/j2r8wtu.

[8] Brad Sears & Christy Mallory, *Economic Motives for Adopting LGBT-Related Workplace Policies*, THE WILLIAMS INST. 2 (Oct. 2011), https://tinyurl.com/yd5g6sha (surveying top 50 Fortune 500 companies (2010) and top 50 federal government contractors (2009)).

[9] *See, e.g.*, Credit Suisse ESG Research, *LGBT: The Value of Diversity* 1 (2016), https://tinyurl.com/ybwhjqe8 (finding that 270 companies that supported and embraced LGBT employees outperformed the market by 3% per annum).

[10] Lauren Box, *It's Not Personal, It's Just Business: The Economic Impact of LGBT Legislation*, 48 IND. L. REV. 995, 995-96 (2015) ("While LGBT inclusiveness is not the only factor contributing to a state's economic vitality, it plays a key role in helping states progress in the economic development race.").

economy as a whole, by removing an artificial barrier to the recruitment, retention, and free flow of talent.

## II.  EXCLUDING SEXUAL ORIENTATION FROM TITLE VII'S PROHIBITION ON SEX DISCRIMINATION UNDERMINES DIVERSE AND INCLUSIVE WORKPLACES

Employment discrimination based on sexual orientation (a form of sex-based discrimination) is widespread and has significant, harmful effects on employers, employees, and the bottom line.

### A.  Discrimination Based On Sexual Orientation Is Still Prevalent In Many Workplaces Across The Country

As of 2016, approximately 10 million adults in the United States (4.1% of all adults) identify as LGBT.[11]  By any measure, the LGBT segment of the U.S. workforce represents a significant number of both public- and private-sector employees.  Businesses draw on and benefit from the contributions of LGBT workers at all levels and across industries.

Many courts have acknowledged the long history of sexual orientation discrimination in the workplace.  *See, e.g.*, *SmithKline Beecham Corp. v. Abbott Labs.*, 740 F.3d 471, 484-85 (9th Cir. 2014) ("for most of the history of this

---

[11]  Gary J. Gates, *In US, More Adults Identifying as LGBT*, GALLUP (Jan. 11, 2017), https://tinyurl.com/yb9d8ubd; *see also* Gary J. Gates, *LGBT Demographics: Comparisons Among Population-Based Surveys*, THE WILLIAMS INST. (Oct. 2014), https://tinyurl.com/y8mn6hjw (summarizing various surveys conducted from 2006 to 2014, the results of which implied that between 5.2 and 9.5 million adults in the U.S. identified as LGBT).

country, being openly gay resulted in significant discrimination," including "in employment"); *Roberts v. United Parcel Serv., Inc.*, 115 F. Supp. 3d 344, 361-66 (E.D.N.Y. 2015) (surveying empirical literature on workplace discrimination against LGBT employees). And notwithstanding *amici*'s own strong commitment to eradicating discrimination against LGBT employees, there is significant evidence that such discrimination remains pervasive in many parts of the country,[12] including evidence that has been offered to Congress in legislative hearings.[13] One analysis estimates that, as of 2011, over 25% of all lesbian, gay, and bisexual respondents had experienced sexual orientation discrimination (such as harassment and wage discrimination) at the workplace in the past five years—a figure that rose to 42% when expanded to cover their entire working lives.[14] Rates of discrimina-

---

[12] *See, e.g.*, Jennifer C. Pizer, et al., *Evidence of Persistent and Pervasive Workplace Discrimination Against LGBT People: The Need for Federal Legislation Prohibiting Discrimination and Providing for Equal Employment Benefits*, 45 LOY. L.A. L. REV. 715, 719-22 (2012).

[13] *Equality at Work: The Employment Non-Discrimination Act: Examining Equality at Work, Including S. 811, To Prohibit Employment Discrimination on the Basis of Sexual Orientation or Gender Identity Before S. Comm. on Health, Educ., Labor, and Pensions*, 112th Cong. 8-10 (2012) (statement of M.V. Lee Badgett, Research Director, The Williams Inst.), https://tinyurl.com/ycqk6ntb (describing evidence of continuing discrimination in sources such as: (1) official complaints filed in states that prohibit such conduct, (2) controlled experiments to measure the treatment of LGBT job applicants, (3) comparisons of wages earned by LGBT employees and their heterosexual peers, and (4) self-reported experiences).

[14] Brad Sears & Christy Mallory, *Documented Evidence of Employment Discrimination & Its Effects on LGBT People*, THE WILLIAMS INST. 4 (July 2011),
(footnote continued)

tion were even higher for LGBT persons who did not hide their sexual orientation at work, with harassment being the most common reported form of discrimination.[15] And nearly one in ten out gay, lesbian, or bisexual respondents reported losing a job due to sexual orientation discrimination in the last five years.[16] Such discrimination is not hidden—up to 30% of heterosexual respondents reported having witnessed anti-gay discrimination at the workplace.[17] This discrimination, which can affect the families and friends of *amici*'s employees, can have a direct bearing on *amici*'s ability to recruit and transfer employees. *See infra* Part II.B.

Significantly, sexual orientation discrimination tends to be higher in jurisdictions without non-discrimination laws.[18] *See infra* Part III. Conversely, workplace discrimination tends to decrease in response to legal rules against it.[19]

---

https://tinyurl.com/ld8w42w; *id.* at 1-2 (prior work documenting discrimination against LGBT persons has drawn data from "field studies, controlled experiments, academic journals, court cases, state and local administrative complaints, complaints to community-based organizations, and in newspapers, books and other media").

[15] Sears & Mallory, *supra* note 14, at 4-5; *see also* Pew Research Center, *A Survey of LGBT Americans: Attitudes, Experiences and Values in Changing Times* 42 (June 2013), https://tinyurl.com/nmfpx7a (21% of LGBT persons report unequal treatment by their employer).

[16] Sears & Mallory, *supra* note 14, at 5.

[17] Pizer, *supra* note 12, at 727.

[18] *See* András Tilcsik, *Pride and Prejudice: Employment Discrimination Against Openly Gay Men in the United States*, 117 AM. J. SOC. 586, 614-15 (2011).

[19] *See* Laura G. Barron & Michelle Hebl, *The Force of Law: The Effects of Sexual Orientation Antidiscrimination Legislation on Interpersonal Discrimination*
(footnote continued)

## B. Excluding Sexual Orientation From Title VII's Scope Leaves Employees Vulnerable To Discrimination And Undermines Inclusive Workplaces

*Amici* recognize that their employees are essential to their success and are, in many ways, their most valuable assets. Accordingly, *amici* are strong proponents of anti-discrimination laws and policies, which are linked to higher morale and productivity. Sexual orientation discrimination—even the mere **risk** of such discrimination—impedes productivity by instilling unnecessary anxiety in employees and creating a culture that suffocates openness.[20] In the absence of full protection from discrimination, LGBT employees may seek to protect themselves by hiding who they are, a practice linked by substantial research to poor workplace and health outcomes.[21]

---

*in Employment*, 19 PSYCH. PUB. POL'Y & L. 191, 200-02 (2013) (summarizing studies finding that antidiscrimination laws reduce discrimination against LGBT individuals by employers, "even after controlling for those community variables shown to affect both the adoption of antidiscrimination laws and prejudice in the absence of legislation"); Luke A. Boso, *Acting Gay, Acting Straight: Sexual Orientation Stereotyping*, 83 TENN. L. REV. 575, 603 (2016) ("[S]tudies have shown that sexual orientation inclusive anti-discrimination laws and policies significantly decrease reports of discrimination in the workplace.").

[20] M.V. Lee Badgett, et al., *The Business Impact of LGBT-Supportive Workplace Policies*, THE WILLIAMS INST. 26 (May 2013), https://tinyurl.com/y7mtb6um.

[21] *See* Badgett, *supra* note 20, at 6, 26; *see also* Burns, *supra* note 7, at 33 ("Gay and transgender employees who are out at work are 20 to 30% more productive than their closeted counterparts."); Pizer, *supra* note 12, at 735-37.

Hiding one's sexual orientation is a rational response to the fact that those persons who are out in the workplace are more likely to experience discrimination than their closeted peers.[22]  Fear of discrimination has also been shown to exact a significant toll on employees—manifesting in, *inter alia*, negative attitudes toward one's career; increased stress; difficulty trusting coworkers and superiors; and experiences of isolation, frustration, anxiety, depression, and low self-esteem.[23]

LGBT employees cannot perform effectively when they are subject to the ever-present possibility of discrimination.  Productivity decreases when workplaces are unwelcoming or hostile to LGBT workers—these workers, for example, report spending time looking for other jobs, feeling exhausted from expending energy to hide their identities, and being distracted due to a negative environment.[24]

"Laws are perhaps the strongest of social structures that uphold and enforce stigma,"[25] and excluding a class of persons from legal protections sends a strong

---

[22]  *See* Sears & Mallory, *supra* note 14, at 1.

[23]  Pizer, *supra* note 12, at 736-37, 740-41.

[24]  Human Rights Campaign, *The Cost of the Closet and the Rewards of Inclusion: Why the Workplace Environment for LGBT People Matters to Employers* 2-3, 22 (May 2014), https://tinyurl.com/ycbzwzme.  Other ways productivity is negatively affected by an unwelcoming workplace environment included when LGBT workers responded to this culture by avoiding a specific project, a social event, or certain coworkers.  *Id.* at 22.

[25]  *Perry v. Schwarzenegger*, 704 F. Supp. 2d 921, 974 (N.D. Cal. 2010).

message in the workplace. Excluding sexual orientation from sex discrimination protections has a stigmatizing effect on LGBT employees, resulting in negative consequences for employee health and productivity.[26] For example, whereas nearly 10% of LGBT employees reported finding a new job to escape a workplace that was not accepting, over 25% of LGBT employees reported staying in a job *specifically* because it offered an inclusive, safe workplace.[27]

The failure of non-discrimination protections to include LGBT employees takes a heavy toll on businesses' bottom lines and, in the aggregate, hurts economic growth. The U.S. economy could save as much as $8.9 billion by protecting and welcoming LGBT employees in the workplace—more than any

---

[26] *See, e.g.*, Mark L. Hatzenbuehler, et al., *Structural Stigma and All-Cause Mortality in Sexual Minority Populations*, 103 SOC. SCI. & MED. 33, 37 (2014) (finding life expectancy reduced by an average of 12 years for sexual minorities living in communities with high levels of anti-gay prejudice); Mark L. Hatzenbuehler, et al., *Stigma as a Fundamental Cause of Population Health Inequalities,* 103 AM. J. PUB. HEALTH 813, 816 (2013) (noting the corrosive impact of stigma on physical and mental health, social relationships, and self-esteem); Ilan H. Meyer, *Prejudice, Social Stress, and Mental Health in Lesbian, Gay, and Bisexual Populations: Conceptual Issues and Research Evidence*, 129 PSYCHOL. BULL. 674, 679-85 (2003) (summarizing empirical evidence of "minority stress" in LGB populations and attendant health consequences); Vickie M. Mays & Susan D. Cochran, *Mental Health Correlates of Perceived Discrimination Among Lesbian, Gay, and Bisexual Adults in the United States*, 91 AM. J. PUB. HEALTH 1869, 1874 (2001) (finding "robust association between experiences of discrimination and indicators of psychiatric morbidity" and noting that "social factors, such as discrimination against gay individuals, function as important risk factors for psychiatric morbidity").

[27] *See* Human Rights Campaign, *supra* note 24, at 23.

other country.[28]  One study, for example, concluded that businesses in one state "risk[ed] losing $8,800 on average for **each** LGBT employee that leaves the state or changes jobs because of the negative environment."[29]  Such costs can be significantly higher depending on the job.[30]

## III.  THE PATCHWORK OF EXISTING ANTI-DISCRIMINATION LAWS CREATES A FRACTURED WORKFORCE, HARMING BUSINESS AND THE U.S. ECONOMY

To be sure, some states and localities have enacted provisions prohibiting sexual orientation discrimination, and some companies have voluntarily enacted similar policies.  While laudable, these provisions cannot substitute for a uniform federal law guarding against discrimination.  Today, residents of 23 states and the District of Columbia are indisputably protected from sexual orientation discrimination in some form,[31] but the remaining 27 states offer no explicit

---

[28]  Ian Johnson & Darren Cooper, *LGBT Diversity: Show Me the Business Case*, OUT NOW 5, 47 (2015), https://tinyurl.com/yaput4mn.

[29]  Christy Mallory & Brad Sears, *Discrimination, Diversity, and Development: The Legal and Economic Implications of North Carolina's HB2*, THE WILLIAMS INST. 2 (May 2016) (emphasis added), https://tinyurl.com/y6wpzoj3.

[30]  *See* Burns, *supra* note 7, at 10 (assessing replacement costs as between $75,000 and $211,000 for an executive with $100,000 salary).

[31]  Twenty-two states prohibit sexual orientation discrimination in private employment by statute.  Cal. Gov't Code § 12940; Colo. Rev. Stat. § 24-34-402; Conn. Gen. Stat. § 46a-81c; Del. Code Ann. tit. 19, § 711; Haw. Rev. Stat. § 378-2; 775 Ill. Comp. Stat. Ann. 5/1-102; Iowa Code § 216.6; Me. Rev. Stat Ann. tit. 5, § 4571; Md. Code Ann., State Gov't § 20-606; Mass. Gen. Laws ch. 151B, § 4; Minn. Stat. § 363A.08; Nev. Rev. Stat. § 613.330; N.H. Rev. Stat. Ann. § 354-A:7;

(footnote continued)

protection under state law or lack favorable federal precedent. In the Eighth Circuit, employees in Iowa and Minnesota are protected under state law, but employees in Arkansas, Missouri, Nebraska, North Dakota and South Dakota are not.

Moreover, state and local laws often differ in important ways from the established protections under Title VII. "For example, some state laws do not allow for recovery of punitive damages at all, or they impose caps that are lower than those under Title VII."[32] Although protections against sexual orientation discrimination are evolving, they are treated inconsistently in federal courts and are often under-inclusive or nonexistent at state and local levels.[33]

---

N.J. Stat. Ann. §§ 10:5-4, 10:5-12; N.M. Stat. Ann. § 28-1-7; N.Y. Exec. Law § 296; Or. Rev. Stat. § 659A.030; R.I. Gen. Laws § 28-5-7; Utah Code Ann. § 34A-5-106; Vt. Stat. Ann. tit. 21, § 495; Wash. Rev. Code §§ 49.60.030, 49.60.180; Wis. Stat. § 111.36. Indiana prohibits sexual orientation discrimination under Title VII pursuant to *Hively v. Ivy Tech. Comm. College of Ind.*, 853 F.3d 339 (7th Cir. 2017) (en banc). The District of Columbia prohibits such discrimination in private employment by statute. D.C. Code § 2-1402.11. Five states now prohibit sexual orientation discrimination in private employment under both Title VII and state statute. *See Zarda v. Altitude Express, Inc.*, --- F.3d ---, 2018 WL 1040820 (2d Cir. Feb. 26, 2018) (en banc) (Connecticut, New York and Vermont); *Hively*, 583 F.3d 339 (Illinois and Wisconsin).

[32] Sandra F. Sperino, *The New Calculus of Punitive Damages for Employment Discrimination Cases*, 62 Okla. L. Rev. 701, 716 & n.96 (2010) (collecting examples of states with less beneficial punitive damages provisions).

[33] Even where state or local laws exist against sexual orientation discrimination, they do not always provide the same level of protection as Title VII. For example, unlike Title VII, the state anti-discrimination statutes of

(footnote continued)

An interpretation of Title VII that excludes sexual orientation as a form of sex discrimination makes it more difficult and expensive for those doing business in jurisdictions without other laws against sexual orientation discrimination to recruit LGBT employees. Reading sexual orientation out of federal anti-discrimination laws leaves LGBT employees and their families vulnerable to employment discrimination and economic disruption because such employees are guaranteed protection only by (at best) a patchwork of inconsistent, and often under-inclusive, state and local laws. The uncertainty and vulnerability LGBT workers face results in diminished employee health, productivity, job engagement, and satisfaction.[34] LGBT employees risk losing the right to be free from discrimination merely because they transfer offices from one jurisdiction to another.[35]

---

Delaware, Vermont, and Washington do not prohibit discrimination based on *perceived* sexual orientation. *See, e.g.*, *Capek v. BNY Mellon, N.A.*, 2016 WL 2993211, at *3 (S.D.N.Y. May 23, 2016) (agreeing with "the weight of authority in other circuit and district courts, which hold that claims of discrimination based on a mistaken 'perception' are cognizable" under Title VII and collecting authority, including 2006 EEOC Compliance Manual); EEOC, COMPLIANCE MANUAL § 15-II (2006) ("Discrimination against an individual based on a perception of his or her race violates Title VII even if that perception is wrong."); EEOC, *Employment Discrimination Based on Religion, Ethnicity, or Country of Origin*, https://tinyurl.com/y7fwz8sj (noting that Title VII prohibits "discriminating because of the perception or belief that a person is a member of a particular" group).

[34] *See* Sears & Mallory, *supra* note 14, at 15-16.

[35] Family members of LGBT employees could also be jeopardized by taking a job in or transferring to a jurisdiction without adequate nondiscrimination laws. As

(footnote continued)

Accordingly, companies conducting business in places that offer lesser or no such protections are at a disadvantage in recruiting the best employees for operations in those jurisdictions. Similarly, *amici*'s LGBT employees (and employees who prefer to work in a community that does not tolerate discrimination) are less willing to transfer to locations where such discrimination is permitted, undermining businesses' ability to organize a workforce without regard for such arbitrary legal barriers. In this way, excluding sexual orientation from Title VII's sex discrimination protections undermines businesses' efforts to recruit, organize, and retain talent.

*Amici* are committed to equal treatment and equal opportunity regardless of sexual orientation. But *amici* cannot create widespread equality in the workplace by themselves; Title VII plays a crucial role in creating and cultivating workplaces

---

of late 2015, there were approximately 972,000 people in a same-sex marriage in the United States, and an estimated 1 million cohabiting same-sex couples. *See* Jeffrey M. Jones & Gary J. Gates, *Same-Sex Marriages Up After Supreme Court Ruling*, GALLUP (Nov. 5, 2015), https://tinyurl.com/ydgazdcd; Gary J. Gates & Frank Newport, *An Estimated 780,000 Americans in Same-Sex Marriages*, GALLUP (Apr. 24, 2015), https://tinyurl.com/y9pryqbs. More than 1 in 4 married same-sex couples are raising children. Gary J. Gates & Taylor N. T. Brown, *Marriage and Same-sex Couples after* Obergefell, THE WILLIAMS INST. 4 (Nov. 2015), https://tinyurl.com/y6ut343k; *see also* Gary J. Gates, *Marriage and Family: LGBT Individuals and Same-Sex Couples*, 25 FUTURE OF CHILDREN, no. 2 at 67 (Fall 2015), https://tinyurl.com/ya6n23yz ("Though estimates vary, as many as 2 million to 3.7 million U.S. children under age 18 may have a lesbian, gay, bisexual, or transgender parent, and about 200,000 are being raised by same-sex couples."). For LGBT parents, the economic stakes of working in a jurisdiction that lacks legal protections are especially high.

that embody equality by affirming the civil right to be free from discrimination.[36] By recognizing that sexual orientation discrimination is prohibited under Title VII, this Court would remove an artificial barrier that restricts the free flow of resources, ideas, and capital. Because businesses benefit from clear, administrable rules and a diverse workforce free from discrimination, this Court should hold that Title VII prohibits discrimination on the basis of sexual orientation.

## CONCLUSION

The failure to recognize that Title VII provides uniform, urgently needed protection against sexual orientation discrimination in employment is bad for employees, workplace culture, and the bottom line. *Amici* urge this Court to hold that Title VII's prohibition on discrimination "because of … sex" includes within its scope the prohibition of sexual orientation discrimination.

Dated: March 14, 2018      Respectfully submitted,

By: /s/ Todd Anten
     Todd Anten (*counsel of record*)
     Justin T. Reinheimer
     Cory D. Struble
     QUINN EMANUEL URQUHART & SULLIVAN, LLP
     51 Madison Ave., 22nd Floor
     New York, NY 10010
     (212) 849-7000

---

[36] *See* Barron & Hebl, *supra* note 19, at 192-202; Boso, *supra* note 19, at 603.

Tico Almeida
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I St. NW, Suite 900
Washington, DC 20005
(202) 538-8000
*Attorneys for amici curiae AdRoll, Inc. d/b/a AdRoll Group; Airbnb; BASF Corporation; Caldwell Partners; CBS Corporation; Christopher Street Financial; Citrix Systems, Inc.; Clockwork; Diageo North America, Inc.; Diversified Health and Wellness Center, LLC; DoorDash, Inc.; Dropbox, Inc.; Eastern Bank; eBay; Edelman; The Estée Lauder Companies; FiftyThree, Inc.; Freedom for All Americans Education Fund; Gusto; IAC/InterActiveCorp; Kargo; KEO Marketing Inc.; Levi Strauss & Co.; Linden Research, Inc. d/b/a Linden Lab; Lyft; Mapbox; MassMutual; National Gay & Lesbian Chamber of Commerce (NGLCC); NIO U.S.; OBOX Solutions; Out Leadership; PayPal Holdings, Inc.; Pinterest; Replacements, Ltd.; Rhapsody International Inc. d/b/a Napster; salesforce.com, inc.; Thumbtack, Inc.; Ultragenyx Pharmaceutical Inc.; Viacom Inc.; Witeck Communications*

Brian D. Klar
KLAR, IZSAK & STENGER, L.L.C.
1505 S. Big Bend Blvd.
St. Louis, Missouri 63117
(314) 863-1117
*Attorneys for amici curiae City National Bank; Deutsche Bank; Microsoft Corporation; Morgan Stanley; RBC Bank (Georgia), N.A.; RBC Capital Markets, LLC; Royal Bank of Canada*

18

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), this brief complies with the type-volume limitations of Fed. R. App. P. 29(a)(5) because it contains 4,134 words, based on the Microsoft Word word-count function, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it was prepared with Microsoft Word in 14-point Times New Roman, a proportionally spaced font.

Pursuant to Local Rule 28A(h)(2), this brief has been scanned for viruses and is virus-free.

Dated:  March 14, 2018              /s/ Todd Anten_____
                                    Todd Anten

## CERTIFICATE OF SERVICE

I certify that on the 14th day of March, 2018, I electronically filed the foregoing brief with the United States Court of Appeals for the Eighth Circuit via the appellate CM/ECF system. I certify that all counsel of record are registered CM/ECF users, and that I served them on the 14th day of March, 2018, via this Court's CM/ECF system.

Dated: March 14, 2018                    /s/ Todd Anten_____
                                          Todd Anten